# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

DAVID MCKINLEY DORSEY,

      Plaintiff,

      v.

DEPARTMENT OF PUBLIC SAFETY AND
CORRECTIONAL SERVICES,
PATRICIA GOINS-JOHNSON, *Warden*,
OLADIPO OLALEYE, RNP,
DR. JAMAAL,
WAYNE WEBB, *North Region Director*, and
DAMIEN FAYAL, *Medical Director*,

      Defendants.

Civil Action No. TDC-14-2568

## MEMORANDUM OPINION

Plaintiff David McKinley Dorsey, an inmate serving a Maryland state sentence at the Patuxent Institution ("Patuxent") in Jessup, Maryland, has filed suit alleging constitutionally inadequate medical care for a hip condition that arose from a sports injury he suffered while incarcerated in January 2012. Dorsey states that Defendants have attempted to medicate the problem, which has not worked, leaving him with pain and numbness. As relief, Dorsey requests magnetic resonance imaging ("MRI") or computed tomography ("CT scan") on his hip, lower back, and left ankle, as well as damages for his pain and suffering.

Presently pending before the Court is the Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, filed on July 13, 2015 by Defendants Warden Patricia Goins-Johnson ("the Warden") and North Region Director Wayne Webb. The matter is ready for disposition, and a hearing is not necessary. *See* D. Md. Local R. 105.6. For the reasons set forth

below, the Motion, construed as a Motion for Summary Judgment, is GRANTED. In addition,

pursuant to the Court's reviewing authority under 28 U.S.C. § 1915(e)(2)(B)(ii), the Court finds

that Dorsey has failed to state a claim against Defendants Department of Public Safety and

Correctional Services ("DPSCS"); Oladipo Olaleye, RNP; Dr. Jamaal; and Damien Fayal.[1]

Accordingly, all claims are DISMISSED.

## BACKGROUND

### I.     Western Correctional Institution

On February 24, 2012, while incarcerated at the Western Correctional Institution

("Western"), Dorsey visited the Office of Inmate Health Services ("Health Services") to

complain of left wrist pain. He advised medical staff that he had injured his wrist in January

playing sports, but he had not reported the injury and instead had been waiting for it to heal on its

own. The physician's assistant who met with him ordered an x-ray, which indicated that he had

a wrist fracture.

On March 27, 2012, Dorsey again visited Health Services and complained of pain in his

left hip arising from a fall during a basketball game in January. He advised that his hip

continued to feel weak and that at times he had a tingling sensation. Dorsey reported that he was

not in pain, but that he could not move the hip as before. The nurse who met with him noted that

his gait was upright and steady and that there was no swelling or deformity in his left hip.

---

[1]     Defendants Olaleye, Jamaal, and Fayal have not been served with the Complaint.
Nevertheless, even if properly served, they would be entitled to dismissal. *See* 28 U.S.C. §
1915(e)(2)(B)(ii) (2012) (stating that if a plaintiff proceeds *in forma pauperis*, "the court shall
dismiss the case at any time if the court determines that . . . the action . . . fails to state a claim
on which relief may be granted").

Dorsey returned to Health Services on April 24, 2012 and complained about left hip pain. An x-ray was taken of Dorsey's left femur and left hip, which revealed no fracture or dislocation. On May 22, 2012, Dorsey visited Health Services again and complained of weakness in his left leg and persistent pain in his left thigh. He was advised of the prior results of the x-rays and provided with pain medication.

On September 11, 2012, Dorsey was again seen by medical staff and continued to complain of problems with his left leg. He was again prescribed pain medication, was directed to follow an exercise program, and instructed not to do any weightlifting or heavy lifting. His work activities were also restricted. Dorsey was further evaluated on December 6, 2012 and December 10, 2012. Although Dorsey continued to complain of hip pain, an x-ray of Dorsey's sacroiliac joints revealed no acute fracture or dislocation.

On January 28, 2013, Dorsey was again evaluated. He reported no benefit from his treatment and requested a steroid injection in his hip. The medical staff changed Dorsey's medications, and when he was evaluated again on April 3, 2013, he reported benefiting from the change in medication and requested a refill.

During a May 16, 2013 visit to Health Services for continuing hip pain, Dorsey's medication was continued and an x-ray of his hip was ordered. He was reevaluated on May 31, 2013, had an x-ray on his lumbar spine, and was provided more pain medication as well as muscle rub. He was seen once more on August 19, 2013, when the nurse practitioner noted that the x-ray on his hip was negative, and that the x-ray on his spine showed "mild degenerative changes" in a certain area, but that the "remainder of spine and alignment is unremarkable." Defs.' Mot. Dismiss or in the Alternative Mot. Summ. J. ("Defs.' Mot.") Ex. 1, Medical Records

at 16, ECF No. 15-1; Medical Records at 66, ECF No. 17-1.[2]  Dorsey was provided with a cortisone injection, insoles for his shoes, and more medication.

After evaluations on September 19, 2013 and October 30, 2013, Dorsey was referred for physical therapy and provided with muscle relaxants.  Dorsey began physical therapy on November 21, 2013, but it was discontinued on November 26, 2013 because of his transfer to Patuxent.

## II.    Patuxent Institution

Newly transferred to Patuxent, Dorsey was evaluated by Olaleye, a nurse practitioner, on December 4, 2013.  Dorsey indicated that he wanted his medications reviewed because they were not working and inquired about physical therapy.  In response, Olaleye continued Dorsey's medications and prescribed two new medications, Indomethacin and Robaxin.  Olaleye also recommended that Dorsey return if his condition did not improve in 14 days.  When Dorsey returned on January 13, 2014, Olaleye continued his medications and, noting the May 31 x-ray showing mild degenerative changes in his spine, ordered that Dorsey refrain from any heavy lifting.  He also noted that Dorsey should follow up in 14 days if his condition did not improve.

At a January 31, 2014 visit, Dorsey stated that he had not been taking Robaxin because it was not helping with shooting pain he had going to both hips.  Olaleye provided a new medication, Neurontin.  Olaleye met with Dorsey once more on May 7, 2014 because Dorsey continued to complain of back pain and advised that Neurontin had not provided any improvement.  Olaleye provided yet another medication.  During a June 11, 2014 visit, Dorsey asked to stop taking a different medication because it made him weak.

---

[2]  Citations are to the page numbers in the original documents.  When exhibits do not have page numbers, or contain multiple sets of page numbers, citations are to the page numbers assigned by the Court's Case Management/Electronic Case Files system.

4

On July 7, 2014, Dorsey reported that the pain was getting worse and requested an MRI. Instead, Olaleye requested that Dorsey be provided with physical therapy. Although Dorsey began physical therapy on July 15, 2014, it did not provide significant relief. On August 21, 2014, Dorsey received a medical note stating that he would benefit from avoiding work duties that involved standing.

In August 2014, Dorsey was referred to an orthopedist. Both the orthopedist and physical therapist recommended an evaluation by a neurologist. Although Dorsey had additional medical visits in August, September, and October, at which Dorsey continued to complain of pain and requested changes in his medications, the neurology consultation had not been approved as of November 2014. On December 5, 2014, Dorsey was evaluated by Olaleye, who requested an MRI of Dorsey's lumbar spine and left hip. The MRI results, which were shared with Dorsey on February 6, 2015, showed no fracture but revealed degenerative changes to Dorsey's hip. Based on the results, Dorsey was placed back in physical therapy, which began again on February 19, 2015, and was referred back to the orthopedist, who examined Dorsey on February 20, 2015. The orthopedist again suggested a consultation with a neurologist.

III.    **Procedural History**

Dissatisfied with his medical treatment at Patuxent, Dorsey filed several Requests under the Administrative Remedy Procedure ("ARP") with the Warden. On May 16, 2014, Dorsey filed an ARP claiming inadequate medical treatment for his injury and asking the Warden to intervene. There is no record of a response from the Warden. On July 6, 2014, Dorsey filed an appeal to the Commissioner of Correction. There is no record of whether the Commissioner responded to this appeal. On August 6, 2014, Dorsey filed an appeal to the Inmate Grievance

Office ("IGO"), which the IGO dismissed on October 1, 2014 because the complaint related to actions by the medical contractor and thus was beyond the jurisdiction of the IGO.[3]

On August 13, 2014, Dorsey filed his Complaint against the DPSCS, claiming inadequate medical care and seeking as relief an MRI and compensation for pain and suffering. On September 16, 2014, the Court issued an Order granting Dorsey leave to proceed *in forma pauperis* and directing him to file an Amended Complaint naming the individuals whom he claims are responsible for the alleged wrongdoing. On October 9, 2014, Dorsey filed an Amended Complaint naming as defendants the Warden, Olaleye, and "Dr. Jamaal," alleging that he had been "getting a run around" from Olaleye because he is only prescribing him medication for his injury, and asserting that the Warden had not responded to his complaint. Am. Compl. at 6 & 8, ECF No. 4. Dorsey requested as relief an MRI or a CT scan and compensation for his pain and suffering.

On November 24, 2014, Dorsey filed a Second Amended Complaint, without seeking the Court's permission, naming the Warden, Olaleye, Director Webb, and Medical Director Damien Fayal as defendants. The Second Amended Complaint specifically alleges "deliberate indifference" based on the failure to receive an MRI or CT scan and the inadequacy of the medication he had received. Second Am. Compl. at 8, ECF No. 6.

---

[3] Dorsey filed two other internal complaints. On August 28, 2014, Dorsey filed another ARP seeking relief from having to work in the kitchen because of his hip condition. On November 6, 2014, the Warden dismissed this ARP, finding that although medical staff had noted that he should not stand for long periods of time, he was still required to work in the kitchen because he could sit and take rest periods to relieve his symptoms. Then on September 3, 2014, Dorsey wrote a letter to Director Webb to complain about inadequate medical treatment and being forced to work in an area that interfered with his health. On September 22, 2014, Director Webb responded by disputing that Dorsey's medical care was inadequate, but stating that because Dorsey had a doctor's order that he should avoid duties involving standing, Dorsey's case manager would review his case and contact him regarding a new work assignment. In his Complaint, Dorsey has not sought any relief relating to his work assignments.

On July 13, 2015, the Warden and Director Webb filed their Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. In their Motion, the Warden and Director Webb assert that Dorsey has received constitutionally adequate medical care, that there is no supervisory liability attributable to them, and that they are entitled to qualified immunity. Dorsey filed a Response on August 3, 2015 in which he stated that he no longer seeks money for pain and suffering but simply wants Patuxent to "do the job more responsibl[y]." Pl.'s Mot. Dismiss ("Pl.'s Resp.") at 2, ECF No. 18. He also requested appointment of counsel.

## DISCUSSION

Construed liberally, Dorsey's Second Amended Complaint alleges that Defendants acted with deliberate indifference to his serious medical needs in violation of the Eighth Amendment. The Warden and Director Webb seek dismissal of, or summary judgment on, Dorsey's claims. Because both parties have submitted evidence for the Court's review, the Motion is construed as a motion for summary judgment. *See* Fed. R. Civ. P. 12(d).

## I.     Second Amended Complaint

Dorsey filed a Second Amended Complaint without seeking Defendants' consent or leave of the Court. Federal Rule of Civil Procedure 15 states that "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Because Dorsey is self-represented and the Second Amended Complaint does not prejudice Defendants, the Court will grant Dorsey leave to amend on this one occasion. However, Dorsey is advised to review the Federal Rules of Civil Procedure and the Local Rules before filing documents in the future.

## II.   Appointment of Counsel

In his Response to the Motion to Dismiss, Dorsey requests that the Court appoint counsel because he has never done any "law work" previously. Pl.'s Resp. at 3. "The court may request an attorney to represent any person" proceeding *in forma pauperis* who is "unable to afford counsel." 28 U.S.C. § 1915(e)(1) (2012).  In civil actions, however, the Court appoints counsel only in exceptional circumstances. *Cook v. Bounds,* 518 F.2d 779, 780 (4th Cir. 1975).  In doing so, the Court considers "the type and complexity of the case," whether the plaintiff has a colorable claim, and the plaintiff's ability to prosecute the claim. *See Whisenant v. Yuam,* 739 F.2d 160, 163 (4th Cir.1984) (internal quotation marks and citations omitted), *abrogated on other grounds by Mallard v. U.S. Dist. Court for the S. Dist. of Iowa,* 490 U.S. 296 (1989). Exceptional circumstances include a litigant who "is barely able to read or write," *id.* at 162, or clearly "has a colorable claim but lacks the capacity to present it," *Berry v. Gutierrez,* 587 F. Supp. 2d 717, 723 (E.D. Va. 2008); *see also Altevogt v. Kirwan,* No. WDQ-11-1061, 2012 WL 135283, at *2 (D. Md. Jan. 13, 2012).

Dorsey's lack of prior experience alone does not give rise to the exceptional circumstances that would warrant appointment of counsel. *See Cook,* 518 F.2d at 780.  Indeed, he has adequately presented his claims and his claims do not seem unduly complex.  Moreover, the appointment of counsel would not alter the outcome of the case.  Therefore, Dorsey's request for the appointment of counsel is denied.

## III.   Legal Standard

Under Federal Rule of Civil Procedure 56(a), the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court must believe the evidence of the nonmoving party, view the facts in the light most favorable to the nonmoving party, and draw all justifiable inferences in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Felty v. Grave–Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987). The nonmoving party has the burden to show a genuine dispute on a material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). "A material fact is one that might affect the outcome of the suit under the governing law." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson*, 477 U.S. at 248) (internal quotation marks omitted). A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 248–49.

## IV.    Eleventh Amendment

To the extent that the DPSCS, which is not referenced in the Second Amended Complaint, remains a defendant in this case, it is entitled to dismissal based on Eleventh Amendment immunity. Under the Eleventh Amendment to the United States Constitution, a state, including its agencies and departments, is generally immune from federal lawsuits brought by its citizens or the citizens of another state. *See Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *see also ARA Health Servs., Inc. v. Dep't of Public Safety & Correc. Servs.*, 685 A.2d 435, 438 (Md. 1996) (holding that the DPSCS "enjoys the protective cloak of sovereign immunity"). While the State of Maryland has waived its sovereign immunity for certain types of cases brought in state courts, *see* Md. Code Ann., State Gov't § 12-201(a), Maryland has explicitly denied waiver of Eleventh Amendment immunity. *See* Md. Code Ann.,

State Gov't § 12-103(2) (stating that under the Maryland Tort Claims Act, Maryland does not "waive any right or defense of the State or its units, officials, or employees in an action in a court of the United States or any other state, including any defense that is available under the 11th Amendment to the United States Constitution"). Moreover, Congress, in enacting § 1983, did not abrogate state sovereign immunity for claims brought under that statute. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989). Thus, Dorsey's claim against the DPSCS, an agency of the State of Maryland, is barred by the Eleventh Amendment and is therefore dismissed.

**V.      Eighth Amendment**

In his Second Amended Complaint, Dorsey asserts that Defendants have acted with deliberate indifference to his serious medical needs, in violation of the Eighth Amendment to the Constitution. The Eighth Amendment prohibits cruel and unusual punishment. U.S. Const. amend. VIII. A prison official violates the Eighth Amendment when the official shows "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). To be "serious," the condition must be "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Jackson*, 775 F.3d at 178 (quoting *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008)) (internal quotation marks omitted); *see also Russell v. Sheffer*, 528 F.2d 318, 318 (4th Cir. 1975) (per curiam) ("Questions of medical judgment are not subject to judicial review."). "An official is deliberately indifferent to an inmate's serious medical needs only when he or she subjectively knows of and disregards an excessive risk to inmate health or safety." *Jackson*, 775 F.3d at 178 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)) (internal quotation marks omitted). "[I]t

10

is not enough that an official should have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Id.* (citations omitted).   Thus, a deliberate indifference claim has both an objective component—that there objectively exists a serious medical condition and an excessive risk to the inmate's health and safety—and a subjective component—that the official subjectively knew of the condition and risk. *Farmer v. Brennan*, 511 U.S. 825, 834, 837 (1978) (holding that an official must have "knowledge" of a risk of harm, which must be an "objectively, sufficiently serious").

Deliberate indifference is an "exacting standard" that requires more than a showing of "mere negligence or even civil recklessness, and as a consequence, many acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Jackson*, 775 F.3d at 178; *Rich v. Bruce*, 129 F.3d 336, 339 (4th Cir. 1997) (finding that even when prison authorities are "too stupid" to realize the excessive risk their actions cause, there is no deliberate indifference).   To constitute deliberate indifference to a serious medical need, the defendant's actions "must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990).

In order for supervisors such as the Warden or Director Webb to be liable for a § 1983 deliberate indifference claim, Dorsey would need to show that they (1) failed promptly to provide needed medical care; (2) "deliberately interfered with the prison doctors' performance"; or (3) "tacitly authorized or were indifferent to the prison physicians' constitutional violations." *Miltier*, 896 F.2d at 854.   Generally, prison officials may rely on the health care providers' expertise. *Id.*

Defendants do not dispute that Dorsey has a serious medical condition that requires treatment. They deny, however, that they failed to treat it adequately and thereby acted with "deliberate indifference" to a serious medical need. *See Estelle*, 429 U.S. at 104. Upon consideration of Dorsey's medical records, the Court does not find evidence that Defendants acted with such gross incompetence as to "shock the conscience." *See Miltier*, 896 F.2d at 851. The records reveal that Dorsey was regularly seen by medical personnel to address the pain he was experiencing as a result of a sports injury sustained in January 2012. While at Western, Dorsey visited Health Services approximately 13 times relating to this injury and received various forms of medication, x-rays on four occasions, and physical therapy. Once he was transferred to Patuxent, he was evaluated by medical professionals at least 12 times, including seven visits in the approximately nine-month period before he filed the Complaint. Dorsey has pointed to no instance where he requested to meet with a medical professional and was denied.

Having reviewed the x-rays from Western, which revealed no fractures or dislocations, Olaleye prescribed a variety of medications beginning in December 2013 and changed the specific forms of medication when Dorsey complained that a medication was ineffective or produced undesirable side effects. In July 2014, Dorsey was sent to physical therapy and was evaluated by an orthopedist in August 2014. He was provided with a medical note indicating that he should not be required to work in roles requiring him to stand for long periods of time.

The only alleged deficiency identified by Dorsey is the failure to perform an MRI or CT scan.[4] Dorsey first requested an MRI in July 2014, only one month before he filed his Complaint in August 2014. The MRI was not ordered until December 2014, four months later. However,

---

[4]    In both the First and Second Amended Complaints, Dorsey requests an MRI *or* a CT scan, indicating that he does not argue that the failure to perform both procedures constituted deliberate indifference to his medical needs.

nothing in the record suggests that Defendants' failure to order one earlier constituted gross incompetence. Although the MRI appears to have identified some degenerative changes to Dorsey's hip that are now informing the present course of treatment, there is no evidence that the decision not to order an MRI sooner was medically unsound, much less evidence of such a grave error as to constitute deliberate indifference under the Eighth Amendment. *See Bowring v. Godwin*, 551 F.2d 44, 47–48 (4th Cir. 1977) (holding that the "essential test is one of medical *necessity* and not simply that which may be considered merely *desirable*") (emphasis added)).

In *Jackson*, the Fourth Circuit found no deliberate indifference when a general practitioner failed to diagnose a serious heart condition and altered the treatment plan, even though a cardiologist had previously diagnosed the condition and treated him for it. 775 F.3d at 178. Even though the second doctor's approach "might support a medical malpractice claim" and "may have been mistaken, even gravely so," the court concluded that the claim was essentially a disagreement between an inmate and a physician over the inmate's proper care. *Id.* The Fourth Circuit has consistently found such disagreements "to fall short of showing deliberate indifference." *Id.*

Here, given the Patuxent medical professionals' ongoing attention to Dorsey's condition, including the provision of medication, physical therapy, and an orthopedic consultation, Dorsey's claim amounts to a disagreement with the decisions of those medical professionals, such as the choice of particular medications and the failure to order an MRI earlier, which does not establish deliberate indifference. *See id.*; *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir.1985) (stating that "[d]isagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged").

In the absence of deliberate indifference by the medical professionals, it follows that the Warden and Director Webb, who are entitled to rely on the professional judgment of the medical staff, did not "tacitly authorize[] their subordinate health care providers to employ grossly incompetent medical procedure." *Miltier*, 896 F.2d at 855. The Court therefore grants summary judgment in favor of Defendants on the Eighth Amendment claim of deliberate indifference to a serious medical need.

In so ruling, the Court is mindful of the fact that Patuxent did not order an MRI or a neurological consultation for Dorsey until after he filed his Complaint. Although the Court finds no constitutional violations to date, it trusts that even in the absence of a pending lawsuit, Patuxent will take steps to ensure that Dorsey receives the medical care needed not only to comply with the minimum requirements of the Constitution, but to address and resolve his chronic pain once and for all.

## CONCLUSION

For the foregoing reasons, the Motion to Dismiss or, in the alternative, Motion for Summary Judgment, construed as a Motion for Summary Judgment, is GRANTED. A separate Order shall issue.

Date:  March 24, 2016

THEODORE D. CHUANG
United States District Judge

14